IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZELPRO ASSEMBLY SOLUTIONS, LLC, an Oregon limited liability company, and CALVIN RASMUSSEN, an individual, | CV-11-519-ST |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| STINGL PRODUCTS, LLC, a Virginia limited liability company, DAVID STINGL, an individual, and TONY SIRIANNI, an individual, | |
| Defendants. | |

STEWART, Magistrate Judge:

## INTRODUCTION

To collect a debt, plaintiffs Zelpro Assembly Solutions, LLC ("Zelpro"), and Calvin Rasmussen ("Rasmussen") filed this lawsuit on April 27, 2011, against defendants Stingl Products, LLC ("Stingl"), David Stingl and Tony Sirianni, alleging claims for breach of contract,

1 - FINDINGS AND RECOMMENDATION

goods sold and delivered, account stated and fraud and misrepresentation. The debt arises from the sale and delivery of swimming pool safety devices in 2009 from Circuit Manufacturing, Inc. ("Circuit") to Stingl worth $2,362,834.00 for which $1,903,720.04 remains unpaid. Plaintiffs later acquired Circuit's chose-in-action against defendants.

All plaintiffs are citizens of Oregon, all defendants are citizens of Virginia, and the amount involved exceeds $75,000.00. Thus, this court has diversity jurisdiction under 28 USC § 1332.

NAC Group, Inc. ("NAC"), a judgment creditor of Circuit, has now filed a Motion to Intervene (docket #15) in order to pursue counterclaims and crossclaims for fraudulent transfer and alter ego. NAC claims that plaintiffs obtained Circuit's chose-in-action against defendants through fraud, deceit, or conversion. Specifically, NAC alleges that plaintiffs engaged in a deceptive and fraudulent scheme to defeat NAC's claim against Circuit by allegedly transferring all of Circuit's assets through its principal, Rasmussen (an insider), to a newly formed company, Zelpro, owned by Rasmussen. NAC requests that the court allow intervention in order for NAC to protect its interest in the fraudulently transferred chose-in-action by Circuit against defendants. For the reasons that follow, that request should be granted.

## FACTUAL BACKGROUND

Plaintiffs and NAC have submitted declarations and exhibits in support of their competing positions. The following facts are taken from those declarations and exhibits, as well as from the allegations in the Complaint and NAC's proposed Answer in Intervention.

2 - FINDINGS AND RECOMMENDATION

NAC sold Circuit goods on credit. Sherris Decl., ¶ 3. Circuit incorporated those goods into a product that it sold to Stingl, also on credit. *Id*, ¶ 3. Rasmussen is Circuit's sole owner, officer and director. NAC's Proposed Answer, ¶ 21.

After Circuit refused to pay NAC for the goods, NAC filed suit in the Circuit Court of the State of Oregon for Clackamas County against Circuit for breach of contract. Sherris Decl., ¶ 2. NAC filed summary judgment against Circuit on August 26, 2010, and obtained a judgment against Circuit for $258,294.24, plus interest, on February 23, 2011. *Id*, ¶ 2 & Ex. A. Throughout the state court proceedings, Circuit promised and repeatedly assured NAC that NAC would be paid in full from the proceeds of Circuit's claim against Stingl. *Id*, ¶ 3.

In the meantime, on July 1, 2010, Circuit defaulted on two promissory notes held by Sterling. Rasmussen Decl., ¶ 4. In reaction to this default, Sterling demanded that Circuit pay the balance of both notes, which amounted to $206,552.67. *Id*. The promissory notes were secured by all of Circuit's inventory, chattel paper, accounts, equipment, and general intangibles (which includes things-in-action) for which UCC-1 statements had been filed with the Oregon Secretary of State. *Id*, Exs.1 & 2.

After Sterling expressed its intent to foreclose on the assets described in the UCC-1 statements by taking possession of the collateral, Sterling and Rasmussen resolved the default by entering into an Assumption Agreement on November 22, 2010, under which Rasmussen acquired Circuit's assets in exchange for his commitment to repay the balance owed on the promissory notes within 12 months. *Id*, ¶ 5 & Ex. 3. At the time the Assumption Agreement was executed, the collateral consisted of various items of equipment and furniture having an estimated value of a little less than $250,000 and the chose-in-action against Stingl. *Id*, ¶ 6.

3 - FINDINGS AND RECOMMENDATION

Sterling filed no judicial proceeding and gave no prior notice of the Assumption Agreement to NAC.  Complaint ¶¶ 16–18; Sherris Decl., ¶ 4.  Circuit's attorney then advised NAC on November 22, 2010, that Circuit was insolvent and had no assets.  Sherris Decl., ¶ 4 & Ex. B.

Just days before November 22, 2010, Circuit's attorney set up Zelpro and is listed as an officer of Zelpro.  *Id*, ¶ 5.  Circuit and Zelpro share the same physical address; share the same equipment; are engaged in the same business; have the same attorney; and have common ownership.  *Id.*  Though Zelpro is a brand new company, its website proclaims that it has been in business for many years.  *Id*.

Sterling took physical possession of Circuit's equipment and premises but expressed little interest in the Stingl chose-in-action.  Rasmussen Decl., ¶ 5.  Rasmussen obtained the keys to Circuit's facility on November 29, 2010.  *Id*; Complaint, ¶ 17.  Also on November 29, 2010, Rasmussen assigned Circuit's assets, including the Stingl chose-in-action, to Zelpro.  Complaint, ¶¶ 18, 34.

Allegedly in possession of all of Circuit's assets, Zelpro initiated this suit against defendants to collect payment for the goods that NAC sold Circuit and Circuit had sold to Stingl.

## FINDINGS

### I. Right to Intervene

NAC first seeks intervention as a matter of right under FRCP 24(a)(2) which permits anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Such an applicant must demonstrate that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. Alisal Water Corp.*, 370 F3d 915, 919 (9th Cir 2004), quoting *United States v. City of Los Angeles, Cal.*, 288 F3d 391, 397 (9th Cir 2002). FRCP 24(a) is to be "construed broadly in favor of the applicants" for intervention. *Yorkshire v. U. S. Internal Revenue Serv.*, 26 F3d 942, 944 (9th Cir), *cert denied*, 513 US 989 (1994). However, the party seeking to intervene bears the burden of showing that all the requirements for intervention have been met. *Alisal Water Corp.*, 370 F3d at 919. Plaintiffs argue that NAC fails to satisfy the first two requirements for intervention as a matter of right.

NAC's purported interest in this matter is Circuit's chose-in-action against Stingl, an asset that could be used to satisfy NAC's judgment against Circuit. Plaintiffs contend that NAC's purported interested is not "a significant protectable interest" because it has been acquired by another creditor, Sterling. However, the heart of NAC's counterclaims is that Sterling did not, in fact, acquire the Stingl chose-in-action and, therefore, could not have legally transferred it to plaintiffs. NAC need not prevail on the merits at this stage, but need only present plausible claims that plaintiffs fraudulently obtained the Stingl chose-in action. They have done so.

Plaintiffs contend that Sterling properly foreclosed on Circuit's assets through Rasmussen's assumption of Circuit's debt. Oregon's Uniform Fraudulent Transfer Act, ORS 95.200-.310, "establishes a case-by-case factual determination of actual fraudulent intent

5 - FINDINGS AND RECOMMENDATION

from the 'badges of fraud' factors set forth in ORS 95.230(2) and from other suspicious factual circumstances surrounding the transfer." *Doughty v. Birkholtz*, 156 Or App 89, 97, 964 P2d 1108, 1113 (1998). NAC alleges sufficient badges of fraud.

The Assumption Agreement transferred Circuit's assets to an insider (Rasmussen, Circuit's President) who transferred the asset to himself. *See* ORS 95.230(2)(a). Rasmussen retained possession and control of the property after the transfer. *See* ORS 95.230(2)(b). NAC had no knowledge of the transfer. *See* ORS 95.230(2)(c). Before the transfer was made, Circuit was sued. *See* ORS 95.230(2)(d). The transfer was for all of Circuit's assets, and Circuit became insolvent shortly after the transfer was made. *See* ORS 95.230(2)(e) & (i). The transfer occurred shortly before NAC obtained a judgment against Circuit. *See* ORS 95.230(2)(j). To make the transfer, Circuit used a lien by Sterling to effectuate the Assumption Agreement and transfer the assets to Rasmussen, an insider. *See* ORS 95.230(2)(k).

Before the Sterling transaction, Circuit owed Sterling approximately $210,000; Rasmussen was personally liable for the debt as a guarantor; and the debt was secured by all of Circuit's assets. After the Sterling transaction, Circuit still owes Sterling approximately $210,000; Rasmussen is still personally liable for the debt as guarantor; and the debt is still secured by all of Circuit's assets. The only change between before and after the Sterling transaction is that Zelpro now owns the collateral and Circuit proclaims that it owns nothing, thereby defeating NAC's judgment. The Oregon legislature had this exact scenario in mind in ORS 95.230(2)(k) ("The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.").

Morevoer, plaintiffs admit that the physical assets of Circuit (excluding the Stingl chose-in-action) totaled "a little less than $250,000" at the time of the foreclosure. Rasmussen Decl., ¶ 6. A secured party that accepts collateral normally does so in partial or full satisfaction of the debt. *See* ORS 79.0620. Yet, according to the Assumption Agreement, Circuit still owes Sterling the full debt, as does Rasmussen as the "guarantor" and now the "assumptor."

Plaintiffs respond that Rasmussen had no control over and could not instruct Sterling, an independent party, to engage in a fraudulent transfer. Even if plaintiffs are correct, NAC alleges sufficient facts to support its allegations of a significant protectable interest in the Singl chose-in-action.

With respect to the second prong, plaintiffs argue that NAC will not be prejudiced by disposition of this action because: (1) NAC's loss is its own fault by failing to take reasonable measures to ascertain whether other creditors had security interests in those assets and to provide the requisite notice to those creditors; (2) NAC cannot stop a settlement even if it were a party; and (3) NAC has other litigation options. Each of these arguments misses the point.

First, an intervenor's own neglect may be a defense to NAC's claims, but is not a reason to deny intervention. Second, while plaintiffs and Stingl can settle their claims, they are unlikely to do so with NAC's claims pending against them. Third, NAC's other litigation options neither adequately protect its interests in the Stingl chose-in-action nor promote judicial economy. Without intervention, NAC will be forced to file a separate action in this court alleging the same claims against the same parties, seek the appointment of a receiver to take charge of the Stingl chose-in-action, seek to enjoin or stay this action, and proceed to levy and execute on the Stingl chose-in-action pursuant to ORS 95.260. This option is more costly, complicated, intrusive and

7 - FINDINGS AND RECOMMENDATION

less effective than intervening in this case to protect its interest in the Stingl chose-in-action before plaintiffs obtain a judgment against defendants. NAC's presence will not delay these proceedings, but will save judicial resources.

Thus, NAC should be allowed to intervene as a matter of right.

## II. Permissive Intervention

Alternatively, NAC seeks permission to intervene under FRCP 24(b) which requires the applicant to "prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F3d 405, 412 (1998) (citation omitted). When exercising its discretion under the permissive intervention rule, the court is required to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FRCP 24(b)(3).

Plaintiffs concede that NAC's motion is timely and that the court will have diversity jurisdiction over its claims. They challenge permissive intervention on the ground that NAC has failed to show a common question of law or fact shared with the main action. To the contrary, NAC's proposed Answer presents the same legal and factual issues alleged by defendants. In their Third, Fifth and Sixth Affirmative Defenses, defendants allege that plaintiffs lack standing and that neither Zelpro nor Rasmussen legitimately possess any claims against defendants. These affirmative defenses put directly at issue the legitimacy of the transfer of the Stingl chose-in-action to plaintiffs, which is at the heart of NAC's counterclaims. Sufficient factual and legal issues are similar to warrant NAC's permissive intervention.

///

## RECOMMENDATION

For the reasons set forth above, this court recommends that the Motion to Intervene by NAC Group, Inc. (docket #15) should be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 24, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 5th day of August, 2011.

s/ Janice M. Stewart_____  
Janice M. Stewart  
United States Magistrate Judge