**COREY B. TOLLIVER,** OSB NO. 075500
E-mail: corey@FARlawfirm.com
FOLAWN ALTERMAN & RICHARDSON LLP
805 SW Broadway, Suite 2750
Portland, Oregon 97205
Telephone: (503) 546-4620
Facsimile: (503) 517-8204

Attorneys for Defendant-Intervenor NAC Group, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ZELPRO ASSEMBLY SOLUTIONS, LLC**, an Oregon limited liability company, **CIRCUIT MANUFACTURING, INC.**, an Oregon corporation, and **CALVIN RASMUSSEN**, an individual, <br><br> Plaintiffs <br> v. <br><br> **STINGL PRODUCTS, LLC**, a Virginia limited liability company, **DAVID STINGL**, an individual, and **TONY SIRIANNI**, an individual, <br><br> Defendants, <br><br> **NAC GROUP, INC.**, a Florida corporation, <br><br> Defendant-Intervenor. | Case No. 3:11-cv-00519-MO <br><br> MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FIRST COUNTERCLAIM |

## INTRODUCTION

This case presents a simple question of priority. Plaintiffs Zelpro Assembly Solutions, LLC, Circuit Manufacturing, Inc., and Calvin Rasmussen assigned defendant-intervenor NAC Group, Inc., ("NAC") an interest in this lawsuit. By its terms, the assignment granted NAC a security interest in this lawsuit, which includes proceeds of this lawsuit. Now, plaintiffs claim that the assignment gives NAC no priority whatsoever to the proceeds of this lawsuit. Plaintiffs'

Page 1 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
    FIRST COUNTERCLAIM

position fails as a matter of law.  As a secured party under the assignment, NAC has priority to any proceeds of this lawsuit pursuant to Article 9 of the Uniform Commercial Code. Additionally, as assignee, NAC has priority to the proceeds of this lawsuit over the plaintiff assignors pursuant to the black letter common law of assignments.

## SUMMARY OF FACTS

Defendant-intervenor NAC sold goods to plaintiff Circuit Manufacturing, Inc., ("Circuit") on credit, which Circuit then incorporated into a product that it sold to defendant Stingl Products, LLC ("Stingl").  (Docket #17 (Decl. of Larry Sherris (in Support of Mot. to Intervene) ¶¶2–3, July 11, 2011)).  Circuit then failed to pay NAC for the goods Circuit had bought on credit.  (Decl. of Sherris ¶2).  NAC filed suit against Circuit in Clackamas County Circuit Court to collect the amounts that Circuit owed to NAC ("Clackamas case").  (Decl. of Sherris ¶2).  Following an unopposed summary judgment, NAC obtained a money judgment against Circuit for $258,294.24, together with interest accruing at nine percent (9%) per annum, from December 1, 2009.  (Decl. of Sherris ¶2, ex. A).  Currently, approximately $301,012.81 is owed on the judgment.

NAC had filed summary judgment against Circuit in the Clackamas case on August 26, 2010.  (Decl. of Sherris ¶2).  Circuit's trial attorney set up a new company on November 12, 2010, plaintiff Zelpro Assembly Solutions, LLC ("Zelpro").  (Decl. of Sherris ¶4).  According to the Complaint in this case, days later, another apparent creditor of Circuit allegedly "foreclosed" on all of Circuit's assets, though no judicial proceedings occurred and no notice was given to NAC.  (Docket # 60 (Third Am. Compl. ¶¶16–18, Apr. 4, 2011); Decl. of Sherris ¶4).  Circuit's attorney then proclaimed on November 22, 2010, that Circuit was insolvent and had no assets. (Decl. of Sherris ¶4, ex. B).  A few days later and unbeknownst to NAC, Circuit's principal, plaintiff Calvin Rasmussen ("Rasmussen"), somehow "acquired" all of Circuit's assets, and contemporaneously "assigned" those assets to the new company—Zelpro—that had been set up

Page 2 –   MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
        FIRST COUNTERCLAIM

by Circuit's litigation attorney. (Third Am. Compl. ¶¶16–18; Decl. of Sherris ¶5). Allegedly in possession of all of Circuit's assets, Zelpro and Rasmussen initiated this suit against Stingl to collect payment for the goods that NAC to sold Circuit and Circuit had sold to Stingl. (Third Am. Compl.; Decl. of Sherris ¶3).

All throughout the Clackamas case proceedings, <u>Circuit promised and repeatedly assured NAC that NAC would be paid in full from the proceeds of Circuit's claim against Stingl.</u> (Decl. of Sherris ¶3). As it turns out, Circuit secretly harbored another intention—to keep NAC at bay long enough to strip Circuit of all its assets and leave NAC to chase an empty shell, while Circuit's principal and alter ego pocketed Circuit's only apparent real asset, the claim against Stingl. (Third Am. Compl. ¶¶16–18).

Circuit and Zelpro are alter egos of one another. (Decl. of Sherris ¶5). Both share the same physical address; share the same equipment; are engaged in the same business; have the same attorney; and have common ownership. (Decl. of Sherris ¶5). Though Zelpro is a brand new company, its website proclaims that it has been in business for many years. (Decl. of Sherris ¶5).

Following discovery of this action, NAC intervened to protect its rights as a judgment creditor with a lien upon the very property at issue in these proceedings—Circuit's claim against Stingl. (Docket #15 (Proposed Def.-Intervenor NAC Group, Inc.'s Mot. to Intervene, July 12, 2011)). The Court correctly granted NAC leave to intervene. (Docket #30 (Op. and Order (Granting Mot. to Intervene), Aug. 31, 2011)). NAC promptly filed an Answer in Intervention alleging claims for fraudulent transfer against plaintiffs and claims for collection against defendants. (Docket #36 (Answer in Intervention, Oct. 5, 2011)). At that point in these proceedings, NAC and plaintiffs both sought to collect on the exact same debt owed by Stingl. (Docket #36 (Ans. in Intervention ¶¶45–48 (Cross-Cl. for Breach of Contract); Third Am. Compl. ¶¶23–26 (Claim for Breach of Contract)).

Page 3 –   MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
           FIRST COUNTERCLAIM

To avoid needless expense and delay, plaintiffs and NAC "tabled" NAC's fraudulent conveyance claims against plaintiffs, pending resolution of plaintiffs' and NAC's collection claims against Stingl.  (Decl. of Corey Tolliver in Supp. of Def.-Intervenor NAC Group, Inc.'s Mot. For Summ. J. ¶3, Mar. 14, 2013).  Plaintiffs as "Assignors" and NAC as "Assignee" entered into a Transfer Agreement which stated in part:

> **2.  Assignment:**  Assignors hereby transfer and assign to Assignee, the following property (the "Property"):
>
> All of Assignors' present and future rights, title, and interest, whether known or unknown, contingent or liquidated, of any kind whatsoever, in all claims relating to Stingl Products, LLC or its principals, members, or employees, including but not limited to those claims alleged in the case of *Zelpro Assembly Solutions, LLC, et. al. v. Stingl Products, LLC*, Case No. CV 11-519 ST (D. Or. 2011), only to the extent necessary to satisfy Assignee's judgment against Circuit Manufacturing, Inc., entered on or about February 23, 2011, in Clackamas County Circuit Court, Case No. CV 10010238.

(Decl. of Tolliver ¶3, ex. C) (the "Assignment").  Once NAC received an assignment of plaintiffs' claims against defendants, NAC and plaintiffs turned their attention to pursuing the collection matter against defendants.  (Decl. of Tolliver ¶3).  NAC withdrew its fraudulent transfer claim against plaintiffs, and amended its Answer in Intervention to allege the Assignment, and correspondingly, a claim against Stingl, and Circuit was added as a plaintiff to this matter.  (Docket #61 (Def.-Intervenor NAC Group, Inc.'s Answer and Cross-Cls. to Plfs.' Third Am. Compl. ¶¶15–22, Feb. 17, 2012); Third Am. Compl. ¶8, Jan. 31, 2012).

NAC and plaintiffs worked together to prosecute a summary judgment against Stingl on the collection claim.  Following this Court's grant of summary judgment, plaintiffs sought entry of judgment that was silent on NAC's Assignment and prior judgment.  (Docket #88 (Mot. For Entry of J. as to Fewer than All Claims or Parties, Jan. 4, 2013)).  NAC objected.  (Docket #91 (Def.-Intervenor's Resp. to Plfs.' Mot. for Entry of J., Jan. 18, 2013); (Docket #109 (Def.-Intervenor's Objections to Findings and Recommendation, Mar. 4, 2013))).  At the hearing on NAC's Objection to the Findings and Recommendation on March 5, 2013, this Court ordered

Page 4 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FIRST COUNTERCLAIM

entry of final judgment under FRCP 54(b) naming plaintiffs and NAC as judgment creditors but requiring all parties to hold all property, funds, or other judgment proceeds in trust until further ordered by this Court.    (Docket #110 (Minutes of Proceeding on Objs. to Findings & Recommendation, Mar. 6, 2013); Decl. of Tolliver ¶4).   At the hearing, this Court granted NAC's oral motion to amend its complaint to bring a counterclaim resolving the issue of priority as to any property or funds received or collected from defendants.  (Decl. of Tolliver ¶4).

Previously, defendants paid plaintiffs' counsel $10,000 to postpone depositions, pending resolution of plaintiffs' summary judgment motion and to be held pending resolution of this action.   (Decl. of Tolliver ¶5, ex. D (p. 4)).   If plaintiffs were successful in this action, the $10,000 would be used in partial satisfaction of any judgment or settlement.   (Decl. of Tolliver ¶5, ex. D (p. 4)).   If plaintiffs were not successful, the $10,000 would be returned to defendants. (Decl. of Tolliver ¶5, ex. D (p. 4)).   Plaintiffs' counsel holds the $10,000 in trust, pending resolution of NAC's claim to priority over the funds.  (Decl. of Tolliver ¶5).

After learning that plaintiffs believed they could "pocket" proceeds of the claim against Stingl without regard to their Assignment to NAC, NAC filed a UCC Financing Statement on December 24, 2012.  (Decl. of Tolliver ¶6, ex. E).

On March 6, 2013, NAC amended its answer to add a counterclaim against plaintiffs for declaratory judgment.  (Docket #112 (NAC's Am. Answer to Third Am. Compl. ¶¶23–28, Mar. 6, 2013)).   Through its counterclaim, NAC seeks a judgment declaring that NAC has priority over plaintiffs to any and all funds, property or proceeds collected or received from any defendant in these proceedings until NAC's judgment against Circuit is satisfied, and that plaintiffs and their counsel must immediately pay over to NAC any and all funds collected or received from defendants in this action, including the $10,000 plaintiffs' counsel currently holds in trust.  (Docket #112 (NAC's Am. Answer to Third Am. Compl. ¶28)).

///

Page 5 –   MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
            FIRST COUNTERCLAIM

## ARGUMENT

The Court is no doubt well aware of the summary judgment standards; therefore NAC will not needlessly lay them out here. This motion presents a straight forward application of basic lien priority and assignment law. The Court determines priorities using state law. *See United States v. Thornburg*, 82 F.3d 886, 893–94 (9th Cir. 1996) (stating that "where Congress has not provided any direction, a federal court may look to state law to determine which lien has priority"); *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (stating "the court must refer to state law to determine the relative priorities of competing liens").

I.    **NAC has priority to any funds received from Stingl.**

Circuit Manufacturing, Inc., and plaintiffs ZelPro Assembly Solutions, LLC, ("ZelPro") and Calvin Rasmussen ("Rasmussen") (collectively "Assignors") assigned to NAC all of their "present and future rights, title, and interest" in this action against Stingl ("Stingl Lawsuit") pursuant to a Transfer Agreement of September 1, 2011. (Decl. of Tolliver ¶3, ex. C). The Transfer Agreement is a security agreement with Assignors granting NAC a security interest in their lawsuit against Stingl in exchange for NAC tolling its claims against the Assignors and securing NAC's rights to payment from the Assignors for NAC's prior judgment. It is well settled in Oregon that as the first-position secured party and assignee, NAC has the first priority to any proceeds of the lawsuit.

A.    **The Transfer Agreement granted NAC a security interest in the Stingl Lawsuit.**

NAC's interest in the Stingl Lawsuit by way of the Assignment is a security interest. Oregon defines a chose in action as "a *thing* in *action*—a thing of which one has not the possession or actual enjoyment, but only a right to *demand* it by *action*." *Hillman v. Shannahan*, 4 Or. 163, 168–69 (1871) (emphasis in original). A chose in action is general intangible personal property. ORS 79.0102(1)(pp) ("'General intangible' means any personal property, including things in action, . . . ."); *see also Pierce v. Pierce*, 153 Or. 248, 253 (1936) (stating "a chose in

Page 6 –   MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
            FIRST COUNTERCLAIM

action is personal property"). As choses in action, a lawsuit for money owed under a contract is a general intangible capable of being assigned as a security interest. ORS 80.010; *see also* ORS 79.0204(1) (stating a "security agreement may create or provide for a security interest in after-acquired collateral").

The Transfer Agreement states Circuit, ZelPro, and Rasmussen are assigning all their rights to NAC as a security interest in the Stingl Lawsuit to secure payment of NAC's judgment against Circuit. A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." ORS 71.2010(ii)(A). Regardless of the form of a transaction, the substance controls on whether the transaction created a security interest. ORS 79.0109(1)(a) (UCC 9-109) (stating that Article 9 applies to "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract"). While Oregon has not directly addressed when an assignment is a security interest, federal case law on the UCC provides guidance.

In *In re Evergreen Valley Resort, Inc.*, the court was asked to determine whether the assignment of the excess on a reserve account constituted an actual transfer or the creation of a security interest. 23 B.R. 659 (Bankr. D. Me. 1982). Citing cases from around the country, the court listed five factors indicating "when an assignment operates to create a security interest":

> [1.] A security interest is indicated where the assignee retains a right to a deficiency on the debt if the assignment does not provide sufficient funds to satisfy the amount of debt.
>
> [2.] A security interest is also indicated when the assignee acknowledges that his rights in the assigned property would be extinguished if the debt owed were to be paid through some other source.
>
> [3.] Likewise, a security interest is indicated if the assignee must account to the assignor for any surplus received from the assignment over the amount of the debt.
>
> [4.] Evidence that the assignor's debt is not reduced on account of the assignment is also evidence that the assignment is intended as security.
>
> [5.] Finally, the contract language itself may express the intent that the assignment is for security only. In contrast, assignments have been found to be

Page 7 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
　　　　FIRST COUNTERCLAIM

absolute transfers where the assignment operates to discharge the underlying debt.

*Id.* at 661–62 (citations omitted) (cited with approval by *In re Contractors Equipment Supply Co.*, 861 F.2d 241, 245 (9th Cir. 1988); *In re Lake at Las Vegas Joint Venture, LLC*, 2012 U.S. App. LEXIS 22471, at *2–3 (9th Cir. 2012)).   In *Evergreen*, the assignor was liable to the assignee if the transfer did not pay off the debt, the assignee's rights in the transfer would be eliminated if the debt was paid, the assignment did not immediately discharge the debt, and the assignee's right to the reserve account was limited to its debt.   The court ruled the assignment created a security interest.  *Id.* at 662.

Here, the Transfer Agreement meets all five factors and is therefore a security interest governed by Article 9 of the UCC.   Under paragraph 5 of the Transfer Agreement, NAC reserved its rights to enforce the judgment against Circuit until it is satisfied.   Paragraph 2 describing the assignment notes that the Assignment is "to the extent necessary to satisfy [NAC's] judgment against Circuit," meaning that NAC will no longer have any rights to the Stingl Lawsuit if the debt is satisfied, thereby leaving Circuit, ZelPro, and Rasmussen entitled to any surplus collection proceeds.   Nothing in the Transfer Agreement reduced NAC's judgment against Circuit.   Lastly, the Transfer Agreement expressly states that it does not discharge NAC's judgment against Circuit:

> 5.   **No Satisfaction of Judgment:**   Nothing herein shall be construed as a satisfaction of the Judgment.  NAC expressly reserves all rights to enforce the Judgment to the maximum extent allowed by law, unless and until the Judgment is satisfied.

(Decl. of Tolliver ¶3, ex. C, ¶5).   Under *Evergreen*, the Transfer Agreement created a security interest in the Stingl Lawsuit, and as such, priority to the proceeds of the lawsuit are governed by Article 9 of the UCC.

**B.    NAC's security interest in the Stingl Lawsuit gives it priority to any proceeds, including priority over Circuit, ZelPro, and Rasmussen.**

Once a security interest attaches to the collateral and is perfected, the security interest is enforceable against the debtor and third parties.  ORS 79.0203.  For a security interest to attach

Page 8 –   MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
       FIRST COUNTERCLAIM

to the collateral (1) value is given, and (2) the debtor has rights in the collateral. *Id.*; *Bank of Eastern Oregon v. Griffith*, 101 Or.App. 528, 531 n. 3 (1990) (interpreting the prior and substantially similar language of 79.0203). A security interest can be perfected by filing a UCC Financing Statement. ORS 79.0310. A UCC Financing Statement remains valid despite subsequent transfers. ORS 79.0507. Moreover, an attached security interest continues in the proceeds of the collateral, despite subsequent transfers or dispositions. ORS 79.0315(1).

A perfected security interest has priority over a nonperfected security interest and over any interest of the debtor. ORS 79.0322(1); *see also* ORS 79.0615 (stating that debtor has a right to the surplus after secured party's debt is satisfied). This includes the proceeds of the collateral. ORS 79.0322(3)(b).

NAC has a perfected security interest in Circuit, ZelPro, and Rasmussen's interest in the Stingl Lawsuit. NAC gave value—it agreed to toll its claims against plaintiffs. Plaintiffs had rights in the collateral—this lawsuit—as evidenced, at the very least, by this Court's grant of summary judgment in plaintiffs' favor. NAC perfected its security interest by filing a UCC Financing Statement. (Decl. of Tolliver, ¶6, ex. E). Because any money received by Circuit, ZelPro, and Rasmussen in the Stingl Lawsuit are proceeds of the collateral, NAC's security interest must be satisfied from the proceeds before the Assignors or any other party are entitled to any of the proceeds.

## C.    Simply as assignee, NAC has priority over Circuit, ZelPro and Rasmussen.

Under an assignment, an assignor transfers whatever rights the assignor has to the assignee, and the "assignee stands in the shoes of [the] assignor." *State ex rel. Adult & Family Services Div. v. Lester*, 45 Or.App. 389, 392 (1980); *see also Imperial Carpet Mills v. Hawley*, 262 Or. 277, 285 (1972) (holding that the assignments normally "transfer whatever rights the assignor has against [the] obligor"); ORS 72.2100(5) (providing that "[a]n assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an

Page 9 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
FIRST COUNTERCLAIM

assignment of rights").  Priority over the rights being assigned is given to the one who received the assignment first, including over the assignor.  *Meier v. Hess*, 23 Or. 599, 603 (1893) (stating "as between successive *bona fide* assignees of a chose in action from the same person, the one prior in point of time will be protected"); *In re Estate of Vaughn*, 38 Or.App. 29, 32 (1979) (stating that "[a]ssignments are generally given priority according to when they were granted"); *see also* ORS 80.010 (stating that debtor is liable to bona fide assignee if debtor pays assignor or any subsequent assignee).

As the first-in-position assignee to the lawsuit and its proceeds, NAC has priority over any other assignee and the assignor.  NAC stands in the position of Circuit, ZelPro, and Rasmussen up to the amount of its judgment against Circuit.  Under *Meier* and *Vaughn*, NAC as an assignee is entitled to be paid before assignors, Circuit, ZelPro, and Rasmussen.  Moreover, were Stingl to pay Circuit, ZelPro, and Rasmussen first without regard to NAC, Stingl would be liable to NAC, and would be required to pay twice as stated in ORS 80.010.  As first assignee, NAC has priority over any other person, including Circuit, ZelPro, and Rasmussen.

## II.     Plaintiffs must hand over the $10,000 held in their attorney's trust account to NAC.

NAC has priority over plaintiffs to any proceeds of this lawsuit, which includes the $10,000 plaintiffs' attorney currently holds in trust.  According to the agreement between the counsel for plaintiffs and for defendants, defendants paid plaintiffs $10,000 to hold in the plaintiffs' attorney's trust account under the following conditions:

(1) If the case reference above is settled, the $10,000 will be applied toward payment of the settlement according to its terms.

(2) If the case is tried and a judgment is rendered in your client's favor, the $10,000 will be applied toward satisfaction of the judgment.

(3) If defendants secure dismissal of all claims in the case, the $10,000 will be returned to Stingl Products, LLC.

(Decl. of Tolliver ¶5, ex. D, p. 4).  By agreement, the $10,000 is for satisfaction of the judgment in this matter.  Since NAC holds a priority position as to any proceeds of the lawsuit, NAC has

Page 10 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
        FIRST COUNTERCLAIM

priority to the $10,000.

## CONCLUSION

There are no genuine issues of material fact for the trier of fact to decide and therefore defendant-intervenor NAC is entitled to judgment as a matter of law on its counter-claim for declaratory judgment.  Plaintiffs granted NAC a security interest in its claims against defendants. Therefore, NAC has priority to any proceeds of this lawsuit, including the $10,000 held in plaintiffs' attorney's trust account.  The Court should not allow plaintiffs to escape the terms of their own agreement.

DATED this 14th day of March, 2013

**FOLAWN ALTERMAN & RICHARDSON LLP**

By /s/ Corey B. Tolliver
**Corey B. Tolliver**, OSB #075500
corey@FARlawfirm.com
Telephone:  (503) 546-4620
Facsimile:  (503) 517-8204
Attorneys for NAC Group, Inc.

Page 11 – MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
FIRST COUNTERCLAIM
**FOLAWN ALTERMAN & RICHARDSON LLP**
805 SW Broadway, Suite 2750
Portland, OR 97205
Telephone:  (503) 517-8200

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2013, I caused to be served a copy of the foregoing

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FIRST

COUNTERCLAIM on the following person in the manner indicated below at the following

address:

Leonard D. DuBoff
lduboff@dubofflaw.com
The DuBoff Law Group LLC
6665 SW Hampton Street, Suite 200
Portland, OR 97223
Telephone: (503) 968-8111
Facsimile: (503) 968-7228

    Attorneys for Plaintiffs

Garrett Garfield
Garrett.Garfield@hklaw.com
Holland & Knight LLP
111 SW Fifth Avenue, Suite 2300
Portland, OR 97204
Telephone: (503) 243-2300
Facsimile: (503) 241-8014

    Attorneys for Defendant STINGL PRODUCTS, LLC

Christopher C. S. Blattner
csturgeon@portlaw.com
cblattner@portlaw.com
Troy G. Sexton
tsexton@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor Street, Suite 200
Portland, OR 97204
Telephone: (503) 417-0500
Facsimile: (503) 417-0501

    Attorneys for Defendants DAVID STINGL and TONY SIRIANNI

☒ by **CM/ECF**

☐ by **Electronic Mail**

☐ by **US Postal Service**

        By /s/  Corey B. Tolliver_____
           Corey B. Tolliver

CERTIFICATE OF SERVICE