IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ZELPRO ASSEMBLY SOLUTIONS LLC**, an Oregon limited liability company, **CIRCUIT MANUFACTURING, INC.**, an Oregon corporation, and **CALVIN RASMUSSEN**, an individual,

      Plaintiffs,

   v.

**STINGL PRODUCTS LLC**, a Virginia limited liability company, **DAVID STINGL**, an individual, and **TONY SIRIANNI**, an individual.

      Defendants,

**NAC GROUP, INC.**, a Florida corporation,

      Defendant-intervenor.

No. 3:11-cv-00519-MO

OPINION AND ORDER

**Mosman, J.**,

    Having prevailed on their motion for summary judgment [142], Defendants David Stingl and Tony Sirianni (collectively, the "Individual Defendants") now move this Court for $40,088.25 in attorney fees pursuant to Oregon law and the terms of a 2005 contract. (Mot. Att'y Fees [157] at 2.) Plaintiffs Zelpro Assembly Solutions ("Zelpro") and Calvin Rasmussen

**1 – OPINION AND ORDER**

(collectively, "Plaintiffs") object to the motion, contending that the 2005 contract does not govern the present dispute. (Pls.' Obj. [160].) Because I find that the 2005 contract was not the contract at issue in the underlying dispute, and no other contractual provision in the record provides for an award of attorney fees to the prevailing party on a breach of contract claim, Defendants' Motion for Attorney Fees [157] is DENIED.

## BACKGROUND

In January 2012, Plaintiffs filed an amended complaint against Stingl Products ("Stingl") and the Individual Defendants, advancing four claims for relief: breach of contract, goods sold and delivered, account stated, and fraud and misrepresentation. (Third Am. Compl. [60].) Magistrate Judge Stewart recommended granting Plaintiffs' partial motion for summary judgment against Stingl on the first three claims. (F&R [83].) I adopted Judge Stewart's Findings and Recommendation, finding Stingl liable for breach of contract, goods sold and delivered, and account stated. (Op. and Order [87].) Plaintiffs continued to press their claims against the Individual Defendants, but on December 17, 2013, I granted the Individual Defendants' motion for summary judgment on all of Plaintiffs' claims, finding that Plaintiffs had failed to present a genuine issue of fact that could support piercing the corporate veil. (J. [156].)

## LEGAL STANDARD

In diversity cases, attorney fees are governed by state law. *See Oregon Realty Co. v. Greenwich Ins. Co.*, No. 12-200, 2013 WL 3287092, at *1 (D. Or. June 28, 2013). The Individual Defendants seek attorney fees pursuant to Or. Rev. Stat. §§ 20.083 and 20.096. (Mot. Att'y Fees [157] at 2; Mem. in Support [158] at 3–4.)

Or. Rev. Stat. § 20.083 provides, in relevant part: "A prevailing party in a civil action relating to an express or implied contract is entitled to an award of attorney fees that is authorized by the terms of the contract or by statute[.]" Further:

> In any action or suit in which a claim is made based on a contract that *specifically provides* that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.

Or. Rev. Stat. § 20.096(1) (emphasis added).

## DISCUSSION

### I.    Individual Defendants' Motion for Attorney Fees

The Individual Defendants argue that, as contemplated by Or. Rev. Stat. §§ 20.083 and 20.096, a dispute resolution clause[1] in the 2005 contract between the parties specifically provided for attorney fees to the prevailing party in a dispute. Thus, as the prevailing party in the lawsuit, they are "entitled to reasonable attorney fees." (Mem. in Support [158] at 2.)

Plaintiffs contend that the two purchase orders underlying the instant lawsuit were made long after the 2005 contract was completed, making the terms of that contract inoperable. (Pls.' Obj. [160] at 2.) Plaintiffs point to a letter, dated January 11, 2007, which states that any future purchase orders would require the cancellation of the then-operative contract. [*Id.* at 3;

---

[1] The Dispute Resolution Clause reads, in relevant part:

> The parties agree that any dispute arising under the terms of this contract, or in any way related to this contract, including failure of payment for goods and/or services provided under this contract, shall be resolved via binding arbitration. . . . The prevailing party in such arbitration shall be entitled to recover its costs of investigation and attorney fees. Prevailing party, as used in this contract, shall be defined as the party who prevails on the majority of issues and/or damages in dispute.

(Rasmussen Decl. Ex. 1 [162-1] at 6.)

3 – **OPINION AND ORDER**

Rasmussen Decl. [162-1] at 10.) Stingl then made two purchase orders in the next two years (the orders at issue in the suit), evidencing their agreement with the cancellation of the 2005 contract. *Id.* Plaintiffs represent that these later purchase orders were made without a formal contract, because Defendant Tony Sirianni "tried to avoid signing contracts and or [*sic*] communicate in writing." (Rasmussen Decl. [162] at 2.) Thus, "the shipment of these shipments [*sic*] was not subject to a contract having an attorney fees provision," and any award of attorney fees to the Individual Defendants is improper. (Pls.' Obj. [160] at 4.)

The Individual Defendants counter that the 2005 contract governed all subsequent purchase orders, and the contract was never cancelled. (Defs.' Reply [163] at 2.) Finally, the Individual Defendants declare that Stingl's insurance carrier required the company to maintain a production contract with its suppliers (such as Zelpro), and the business relationship between the Plaintiffs and Stingl could not have been based on "simple purchase orders issued as needed." *Id.* at 3. Thus, the 2005 contract must have remained in effect. *Id.*

## II.    The 2008 and 2009 Purchase Orders are Not Governed by the Terms of the 2005 Contract

I must determine whether the 2005 contract governed the 2008 and 2009 purchase orders. If not, the Individual Defendants cannot recover attorney fees, because the underlying lawsuit did not involve a contract that "specifically provide[d]" attorney fees and costs to the prevailing party in a breach of contract claim. *See* Or. Rev. Stat. § 20.096. Three categories of evidence help answer the question in the negative: (1) the terms of the 2005 contract; (2) a "cancellation letter" sent to the Individual Defendants in 2007; and (3) other evidence contained in the record.

### A.    *The Plain Language of the 2005 Contract*

I begin with an examination of the express terms of the 2005 contract and the associated purchase order. The 2005 contract is titled "Assembly Contract, (SR500, Quotation #971-1)" and

specifies that its first page is price quotation #971-1, issued by Circuit Manufacturing ("CMI"), which describes "the work to be performed by CMI, quantity of goods ordered, price of goods ordered[,] and schedule for delivery." (Rasmussen Decl. Ex. 1 [162-1] at 4.) The 2005 contract also states that

> goods or services not described in this quotation are not part of the parties' agreement and will not be provided. Additional goods and services which may be required after the signing of this contract must be reduced to writing and agreed to by both parties in order to be binding on either of them.[2]

*Id.* Finally, the contract contains a dispute resolution clause, which states that "any dispute arising under the terms of this contract . . . shall be resolved via binding arbitration . . . . The prevailing party in such arbitration shall be entitled to recover its costs of investigation and attorney fees."[3] *Id.* at 6. The contract was signed on April 5, 2005, by Plaintiff Calvin Rasmussen and Defendant Tony Sirianni. *Id.* Six days later, Stingl ordered 10,000 SR-500 switches at $176.55 each (Order #2004), pursuant to the terms of price quotation #971-1. *Id.* at 7. The parties dispute when Order #2004 was fulfilled, but all agree that CMI did eventually fulfill the order.[4]

The face of the 2005 contract reveals that the terms of that contract did not govern the 2008 and 2009 purchase orders. The contract incorporates a specific price quotation as its first page, and the 2005 purchase order—Order #2004—was made pursuant to the terms of that price

---

[2] The import of this last sentence is somewhat unclear. On the one hand, the sentence could be read to mean that the contract only relates to the specific purchase order attached as the first page, and additional goods and services must be ordered pursuant to future contracts. The immediately preceding sentence supports this reading ("goods . . . not described in this quotation are not part of the parties' agreement"). On the other hand, the Individual Defendants suggest that this language should be read differently: the contract will cover all future orders of goods and services, in addition to the current order, but any future orders must be reflected in writing. (Defs.' Reply [163] at 2.) Considering the rest of the contract as a whole, particularly the incorporation of a specific price quotation as the contract's first page, I read this language to mean that later orders of goods and services will be governed by later contracts.
[3] The plain language of the dispute resolution clause provides for attorney fees incurred during *arbitration*, not *litigation*. However, Plaintiffs waived objection to the Individual Defendants' proposed reading of the provision by failing to contest it in their objection.
[4] As Magistrate Judge Stewart noted, "when [the 2005] contract was completed is immaterial since Stingl's claims arise only from later orders and deliveries." (F&R [83] at 5 n.1.)

**5 – OPINION AND ORDER**

quotation. All parties agree that Order #2004 was fulfilled sometime in 2005 or 2006. This releases the parties from any future obligation under that contract. The dispute resolution clause could not govern the future dealings between the parties unless incorporated into a later contract.

### B. *The 2007 "Cancellation" Letter*

Plaintiff Calvin Rasmussen also submits a letter, addressed to the Individual Defendants, as further evidence that the 2005 contract was no longer in force at the time the relevant purchase orders were placed. In the letter, dated January 11, 2007, Mr. Rasmussen informs the Individual Defendants that an attached quote for 1,000 "pool and spa assembly" units assumes the use of components from Order #2004. (Rasmussen Decl. [162-1] at 10.) The use of those components means that CMI "will be required to cancel the current contract under this Purchase Order [#2004] in conjunction to starting the new agreement."[5] *Id.* The price quotation associated with the 2007 letter is not contained in the record—the next item in the record is price quotation #1572, dated July 18, 2008. *Id.* at 11. This price quotation served as the basis for the 2008 and 2009 purchase orders. (F&R [83] at 6; Sirianni Decl. Ex. F, G [69] at 21–23.)

Plaintiffs assert that the existence of a letter calling for the cancellation of the 2005 contract is dispositive evidence that the 2005 contract was no longer in effect at the time of the 2008 and 2009 purchase orders. (Pls.' Obj. [160] at 3.) Of course, if a party's contractual duties remain unperformed, a unilateral "cancellation" may constitute material breach. *See, e.g.*, *Weaver v. Williams*, 211 Or. 668, 675–76, 317 P.2d 1108, 1111–12 (1957). Here, there is no documentation in the record indicating that either Stingl or the Individual Defendants agreed to cancel the 2005 contract, or in any other way acknowledged the 2007 letter.

---

[5] Plaintiffs contend that the "current contract" referenced in the letter is the 2005 contract. Although the letter does not specify what contract is the "current contract," it is logical to read the cancellation letter as referring to the 2005 contract, since that was the contract under which Order #2004 was placed.

**6 – OPINION AND ORDER**

Based on the above discussion of the terms of the 2005 contract, however, I find there was nothing left to "cancel." The 2005 contract specifically incorporated a single price quotation whose terms governed the contemporaneous purchase order. The parties disagree about when this order was fulfilled, but agree that delivery was completed in June of 2006, at the latest. (F&R [83] at 5 n.1.) Thus, the 2005 contract was no longer in force because each party's obligation was fulfilled, not because the contract was cancelled.

### C.  *Other Evidence in the Record*

The purchase orders that triggered the instant lawsuit were made in 2008 and 2009. (F&R [83] at 6). CMI issued price quotation #1572 on July 18, 2008, specifying that it could deliver 2,500 SR-500 switches at $196.80 each. (Rasmussen Decl. Ex. 1 [162-1] at 11.) In November 2008, Stingl ordered 20,000 units (Order #2120) at the quoted price. *Id.* at 12. Stingl ordered an additional 50,000 units, at the same price, in early 2009. (F&R [83] at 6; Sirianni Decl. Ex. G [69] at 23.) Beyond the terms included in the price quotation and the purchase orders, there are no documents in the record that reveal any other terms or specifications relating to the 2008 and 2009 purchase orders. Neither the 2008 price quotation nor Order #2120 references the 2005 contract or incorporates any of its terms. Instead, the price quotation and purchase order include basic terms such as price, quantity, part number, and delivery method. (Rasmussen Decl. [162-1] at 11–12.) According to Plaintiffs, a more extensive contract was not drafted to accompany these purchase orders because Defendant Tony Sirianni "tried to avoid signing contracts." (Pls.' Obj. [160] at 3.) According to the Individual Defendants, Stingl's insurance company required it "to maintain a production contract with its product manufacturer at all times." (Defs.' Reply [163] at 2–3). Thus, a "production contract" must have been in effect at the time the 2008 and 2009 purchase orders were made. *Id.* The Individual Defendants contend that this "production

**7 – OPINION AND ORDER**

contract" was the 2005 contract, which continued in effect and governed the subsequent purchase orders. *Id.* at 3.

Here again, the additional evidence in the record supports Plaintiffs' argument. Judging by the terms of the price quotation #1572 and Order #2120, the transaction between the parties did not incorporate or otherwise reference the terms of the 2005 contract, including the dispute resolution clause. Neither price quotation #1572 nor Order #2120 itself includes a dispute resolution clause, or any other clause specifically providing for attorney fees. Finally, that an insurance company requires its insured to operate under a production contract does not *a fortiori* demonstrate that such a contract actually exists, let alone that a production contract provides for attorney fees. The Individual Defendants state that the required production contract "was the Assembly Contract," but provide no additional support for that contention. (Defs.' Reply [163] at 3.)

## IV. Other Issues

The parties devote the rest of their briefs to arguing about the proper fee award under the Or. Rev. Stat. § 20.075 factors, and whether the Individual Defendants can be considered the "prevailing party." Because I find that the Individual Defendants are not entitled to attorney fees, these arguments are moot.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Attorney Fees [157] is DENIED.

IT IS SO ORDERED.

DATED this \_\_20\_\_ day of February, 2014.

/s/Michael W. Mosman
_____
MICHAEL W. MOSMAN
United States District Judge

**8 – OPINION AND ORDER**